```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
SURINDER CHABRA, PARVINDER CHABRA,
and NARINDER CHABRA,

                    Plaintiffs,         MEMORANDUM & ORDER
                                        12-CV-1113(JS)(ARL)
        -against-

MAPLEWOOD PARTNERS, L.P.; GLEN DELL;
LT. GENERAL BUSTER C. GLOSSON; and
RON AUGUSTIN,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:     Howard W. Burns, Jr., Esq.
                    Law Offices of Howard W. Burns Jr.
                    170 Broadway, Suite 609
                    New York, NY 10038

For Defendants:     Scott Michael Kessler, Esq.
                    Akerman Senterfitt LLP
                    335 Madison Avenue, Suite 2600
                    New York, NY 10017
```

SEYBERT, District Judge:

Currently pending before the Court are: (1) MapleWood Partners, L.P.'s ("Maplewood") motion to dismiss the First Amended Complaint, and (2) plaintiffs Surinder Chabra ("Sonny"), Parvinder Chabra ("Parvinder"), and Narinder Chabra's ("Narinder" and collectively, "Plaintiffs") motion to amend the First Amended Complaint. For the following reasons, Maplewood's motion to dismiss is DENIED and Plaintiff's motion to amend is DENIED AS MOOT.

BACKGROUND

The Court presumes familiarity with the underlying facts of this case, which are extensively detailed in the Court's Memorandum and Order of February 28, 2013 (the "First Dismissal Order," Docket Entry 32). In that Order, the Court denied a motion to change venue filed on behalf of Maplewood, Glen Dell, Lt. General Buster C. Glosson, and Ron Augustin (collectively, "Defendants"); granted in part and denied in part Defendants' motion to dismiss the Complaint; and sua sponte granted Plaintiffs leave to replead. (See First Dismissal Order at 22-23.)

Plaintiffs filed their First Amended Complaint on April 19, 2013, which alleges the same essential factual background as the original Complaint, but attempts to rectify deficiencies in pleading their claims of fraud with particularity.[1] Accordingly, the Court will not reiterate the lengthy recitation of the facts here.[2] Briefly, however, Plaintiffs allege that Maplewood committed fraud and caused the demise of AMC Computer Corporation ("AMC").

---

[1] Notably, the First Amended Complaint raises claims against Maplewood only. As such, the Clerk of the Court is directed to terminate Dell, Glosson, and Augustin as defendants.

[2] Capitalized words and phrases refer to terms as defined in the First Dismissal Order.

2

Prior to their involvement with Maplewood, Plaintiffs owned all of AMC's outstanding shares. (Am. Compl. ¶ 16.) In November 1999, Robert V. Glaser ("Glaser") and Maplewood approached Plaintiffs regarding investment in AMC. (Am. Compl. ¶ 22.) There are three primary events which form the foundation of Plaintiffs' First Amended Complaint. Central to the claims are representations and statements made by Glaser, Maplewood's managing partner, and Robert J. Reale, a limited partner of Maplewood. (See Am. Compl. ¶¶ 17, 31.)

First, in 2001, Maplewood opened a $2 million credit line for AMC with Eugenia VI Venture Partners ("Eugenia"). (Am. Compl. ¶ 71.) Maplewood allegedly chose Eugenia because it was affiliated with a company named Casita, L.P. ("Casita"). (Am. Compl. ¶¶ 73-82.) To appease Casita, Maplewood "embarked upon a fraudulent plan and scheme" pursuant to which AMC would pay Casita's affiliate Eugenia excessive fees and interest and restructure AMC (the "AMC Restructuring") to protect Eugenia as a preferred creditor. (See, e.g., Am. Compl. ¶ 82.)

Second, after the AMC Restructuring, Eugenia began providing the accounts receivable financing for all of AMC's operations. (Am. Compl. ¶ 115.) Plaintiffs allege that Eugenia loan documents were withheld from them and that Glaser and Reale made various fraudulent representations and statements regarding the terms of the financing. (See Am. Compl. ¶¶ 116-149.)

3

Third, in 2003, Reale approached Sonny Chabra requesting an emergency loan to AMC in the amount of $500,000. (Am. Compl. ¶ 150.) Plaintiffs allege that Reale made several fraudulent representations, including that Sonny Chabra would be repaid. (Am. Compl. ¶¶ 151-157.) According to Plaintiffs, Sonny received only $150,000 of the $500,000 loan. (Am. Compl. ¶¶ 158-167.)

Plaintiffs allege various other events, but ultimately assert claims for: (1) fraud in the inducement relating to the AMC Restructuring, (2) fraud in the inducement regarding the Eugenia financing, (3) fraud in the inducement regarding the AMC loan, and (4) fraud generally.

## DISCUSSION

Maplewood now moves to dismiss the First Amended Complaint, arguing that Plaintiffs claims are time-barred and that Plaintiffs have still failed to plead their fraud claims with particularity. Plaintiffs cross-move to amend in the event that the Court finds their First Amended Complaint to be deficient. The Court will first address Maplewood's motion to dismiss before turning to Plaintiffs' cross-motion.

I. Legal Standard on a Motion to Dismiss

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662,

4

678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

A. Timeliness

Maplewood maintains that Plaintiffs' claims against it are based solely upon statements allegedly made by Glaser and Reale, "whose potential liability for these alleged statements has been extinguished by the statute of limitations." (Maplewood Br. to Dismiss, Docket Entry 39-3, at 2.) As such, they argue that there is no primary liability against Glaser and Reale and therefore there can be no vicarious liability against Maplewood. (Maplewood Br. to Dismiss at 2.) The Court finds that Plaintiffs' allegations are sufficient to overcome Maplewood's motion as asserted.

5

As in the original Complaint, Plaintiffs allege in the First Amended Complaint that their claims are not time-barred because Maplewood signed a stipulation agreeing to discontinue a prior litigation and not to assert a statute of limitations defense in a subsequent litigation (the "Dismissal Agreement"). (Am. Compl. ¶ 3.) In their motion to dismiss the original Complaint, the collective Defendants argued that the Dismissal Agreement violated New York General Obligations Law § 17-103. (First Dismissal Order at 17.) That statute proscribes indefinite tolling periods for "an action arising out of a contract express or implied." N.Y. Gen. Obligations Law § 17-103(1). The Court ultimately rejected Defendants' argument that this is a contract-based action and found that the Dismissal Agreement itself was ambiguous, thus precluding dismissal at this stage. (First Dismissal Order at 18-19.)

Maplewood now asserts that "Plaintiffs have concocted an agency theory of liability to attempt to bring the alleged conduct of Glaser and Reale--whom they no longer seek to hold individually liable--within the confines of the Dismissal Agreement." (Maplewood Br. to Dismiss at 7.) Thus, they maintain that, because Plaintiffs' claims against Glaser and Reale are time-barred, there is no primary liability upon which to base a vicarious liability claim against Maplewood. (Maplewood Br. to Dismiss at 7-9.) Plaintiffs counter that

Maplewood is attempting to revive its previously-rejected statute of limitations argument and that, in any event, Plaintiffs' claims against Maplewood rest on common law agency principles rather than vicarious liability.

The Court agrees with Plaintiffs that the Dismissal Agreement may foreclose Maplewood's current argument. Although Maplewood has framed its argument in terms of vicarious liability, its assertions necessarily include the statute of limitations and the fact that Plaintiffs' claims against Glaser and Reale are now time-barred. As the Court held in its First Dismissal Order, the Dismissal Agreement is ambiguous. All that the Court has before it at this stage is the statement in the Dismissal Agreement that "Defendants agree not to raise a defense of statute of limitations on any claim asserted in a subsequent action unless it could have been raised at the time of this action." (Heywood Declaration, Docket Entry 4-1, Ex. H.) Maplewood signed the Dismissal Agreement in 2006, less than six years after the events at issue, and therefore could not have asserted their current defense. Accordingly, whether Maplewood intended to waive a statute of limitations defense in this context is unclear and the Court cannot make this determination on a motion to dismiss. (See First Dismissal Order at 19 (citing Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 178 (2d Cir. 2004) for

the proposition that the Court cannot resolve such ambiguities on a motion to dismiss).)

Moreover, as the Court previously held, New York General Obligations Law § 17-103 applies primarily to contract actions. Its only applicability, if at all, is subdivision 4(b) which "reserves a court's equitable power to estop a defendant from asserting the defense of statute of limitations when such estoppel is necessary to prevent unfairness." LEE S. KREINDLER ET AL., NEW YORK PRACTICE SERIES: NEW YORK LAW OF TORTS § 19:5 (2013). Although the parties have not squarely addressed this issue, this suggests that the Court's equitable powers are at play. On one side of the equation is the Dismissal Agreement. On the other is the sheer passage of time and Maplewood's current assertion that Plaintiffs cannot viably rest their claims on vicarious liability.

In the interest of completeness, Maplewood bases its argument solely on the issue of vicarious liability. Plaintiffs have asserted that their claims are, instead, grounded on common law principles of agency. In support, Plaintiffs cite to Karaduman v. Newsday, Inc., 51 N.Y.2d 531, 435 N.Y.S.2d 556, 416 N.E.2d 557 (1980). (Pl.'s Opp. Br., Docket Entry 44, at 7-11.) There, the New York Court of Appeals held that, because the plaintiff's libel claims against individual reporters and an editor were barred by the applicable statute of limitations,

Newsday--the newspaper for which the employees worked--could not be held vicariously liable. In making this determination, however, the Court of Appeals specifically noted that its analysis may well have been very different if it were to apply "conventional principles of agency" because, in that case, Newsday could be held directly liable as a principal. Karaduman, 51 N.Y.2d at 547, 435 N.Y.S.2d at 564, 416 N.E.2d at 564.³ Thus, Plaintiffs maintain that, although Maplewood could not be held vicariously liable if there were no primary liability against Glaser and Reale, it can be held liable under common law agency concepts even if claims against Glaser and Reale are time-barred. (Pl.'s Opp. Br. at 7.)

Maplewood does not dispute Plaintiffs' legal premise, but maintains that Karaduman is inapplicable because Plaintiffs seek to hold Maplewood vicariously liable, and it is well-settled that vicarious liability depends on primary liability. (Maplewood Reply Br., Docket Entry 47, at 5.) A principal is vicariously liable when, inter alia, the agent/employee commits a tort while acting within the scope of his employment. See RESTATEMENT (THIRD) OF AGENCY § 7.03(2) (2006); see also Meyer v. Holley, 537 U.S. 280, 285, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003) ("It is well established that traditional vicarious

---

³ Both parties have set forth their respective readings of this case. The Court has provided a general summary.

9

liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment."). A principal is subject to direct liability, however, when, inter alia, the agent acts with actual authority or the principal ratifies the agent's conduct. RESTATEMENT (THIRD) OF AGENCY § 7.03(1)(2006).

Here, contrary to Maplewood's assertion, Plaintiff has at least plausibly alleged that Glaser and Reale acted with actual authority sufficient to maintain direct corporate liability. "Actual authority arises from a manifestation from principal to agent." Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 486 (S.D.N.Y. 2001) (internal quotation marks and citation omitted); see Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 435 (S.D.N.Y. 2010) ("To establish an actual agency theory of liability, Plaintiffs must allege '(1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent.'" (quoting Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A., 347 F.3d 448, 462 (2d Cir. 2003)). "The consent for actual authority may be either express or implied from the parties' words and conduct as construed in light of the surrounding circumstances." Cromer Fin. Ltd., 137 F. Supp. 2d at 486 (internal quotation marks and citation omitted). The Amended Complaint alleges that Maplewood knew, approved, accepted, and adopted Glaser and Reale's actions

10

and that Glaser and Reale were acting "for and on behalf" of Maplewood. (Am. Compl. ¶¶ 42-43.) At this juncture, these allegations are sufficient. See Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 51 F. Supp. 2d 457, 471 (S.D.N.Y. 1999) ("New York courts have recognized that the question of the existence and scope of an agency relationship is a factual issue that a court cannot properly adjudicate on a motion to dismiss.").

Accordingly, Maplewood's motion to dismiss the Amended Complaint because Plaintiffs' claims are time-barred is DENIED.

B. <u>Particularity of Fraud Claims</u>

Maplewood further asserts that, even if Plaintiffs' claims are not time-barred, Plaintiffs have still failed to plead their claims of fraud with particularity as required by Federal Rule of Civil Procedure 9(b). The Court disagrees.

As more fully explained in the Court's First Dismissal Order, Rule 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To comply with the particularity requirement, a "[p]laintiff must: (1) specify the alleged fraudulent statements; (2) identify the speaker; (3) state where, when and to whom the statements were made; and (4) explain why the statements were fraudulent." <u>Waldman v. New Chapter, Inc.</u>, 714 F. Supp. 2d 398, 402 (E.D.N.Y. 2010).

11

Maplewood contends that Plaintiffs have not pled fraud with particularity because the First Amended Complaint references vague windows of time for some statements and because Plaintiffs do not explain why other statements were fraudulent when made. The Court begins first with Maplewood's argument regarding vague references to time. In particular, Maplewood cites to eleven paragraphs in the First Amended Complaint, which contain language such as "a few weeks after the August 25, 2000 Acquisition Closing" (Am. Compl. ¶ 40), "on [one] occasion" (Am. Compl. ¶¶ 48-49, see also id. ¶ 53), and similar statements (Am. Compl. ¶¶ 65, 93, 138) or which do not contain a time period at all (Am. Compl. ¶¶ 57, 67, 70). However, as Plaintiffs correctly assert, these paragraphs refer to background facts, not alleged fraudulent statements at issue. In contrast, Plaintiffs' allegations regarding fraudulent statements reference specific dates or time periods. (See, e.g., Am. Compl. ¶¶ 84, 86 (regarding statements made during a September 23, 2002 meeting); id. ¶¶ 90 (regarding statements made during October 2002).) Moreover, allegations regarding specific time frames are sufficient. See Fennick v. NYCM, No. 13-CV-0085, 2013 WL 5323630, at *5 (N.D.N.Y. Sept. 20, 2013) ("'To meet its burden of pleading a claim of fraud, the complaint must adequately specify the misleading or fraudulent statements the claimant alleges it relied upon as well as the location, time

frame, and identity of those responsible for making the statements."' (quoting Stanely v. Bray Terminals, Inc., 197 F.R.D. 224, 228 (N.D.N.Y. 2000)); Isanaka v. Spectrum Tech. USA Inc., 131 F. Supp. 2d 353, 360 (N.D.N.Y. Feb. 18, 2001) ("Plaintiff must adequately specify the misleading or fraudulent statements he alleges he relied upon as well as the location, time frame, and identity of those responsible for making the statements in his complaint.").

As to Maplewood's contention that Plaintiffs have failed to allege that the purportedly fraudulent statements were false when made, the Court also disagrees. Maplewood maintains that Plaintiffs did not set forth specific facts to show why the following were false when made: (1) the statement that GE was no longer willing to provide financing to AMC (Am. Compl. ¶¶ 65-70), (2) alleged representations regarding the assertion that Eugenia demanded restructuring of AMC (Am. Compl. ¶¶ 90-97), (3) alleged representations that Maplewood intended to sell AMC (Am. Compl. ¶¶ 136-37), and (4) alleged representations that the $500,000 loan to Sonny Chabra would be repaid (Am. Compl. ¶¶ 150-167).

First, Plaintiffs have alleged that statements regarding GE's willingness to continue financing were misrepresentations because GE was willing to continue financing--though on terms that allegedly did not serve Maplewood (see Am.

13

Compl. ¶ 69)--and were made to effectuate a fraudulent plan or scheme (see Pl.'s Opp. Br. at 19-20). Second, Plaintiffs have sufficiently supported their allegations regarding statements that Eugenia demanded the AMC Restructuring. Plaintiffs have alleged that Eugenia was not the only lending option and that the AMC Restructuring was conceived by Maplewood. (Am. Compl. ¶¶ 96-97.) In support, they have alleged that Glaser and Reale's statements regarding the terms of the AMC Restructuring were false and that the AMC Restructuring was contrived in order to appease Casita. Third, as to Plaintiffs' allegations regarding representations that Maplewood intended to sell AMC, the First Amended Complaint alleges that such statements were made to induce Sonny Chabra into the AMC Restructuring and Eugenia financing arrangements when, in fact, Maplewood had seemingly intended to sell only a division of AMC. (Am. Compl. ¶¶ 136-38.) Finally, as to the $500,000 loan, Plaintiffs have alleged that statements regarding repayment were false because Maplewood knew that the loan could not be paid under the terms of the Eugenia loan. (Am. Compl. ¶ 166.) Accordingly, the Court finds that Plaintiffs have alleged enough to overcome Maplewood's motion on this point. See U.S. v. Wells Fargo Bank, N.A., --- F. Supp. 2d ----, 2013 WL 5312564, at *16 (S.D.N.Y. Sept. 24, 2013) ("Whether a complaint complies with [Rule 9(b)] depends upon the nature of the case, the complexity or

14

simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adversary party and enable him to prepare a responsive pleading." (internal quotation marks and citation omitted)).

Maplewood's motion to dismiss the First Amended Complaint for failure to plead fraud with particularity is therefore DENIED.

II. Plaintiffs' Cross-Motion to Amend

Plaintiffs also cross-move to amend their First Amended Complaint in the event that the Court grants Maplewood's motion to dismiss. However, as the Court has denied Maplewood's motion, amendment is not necessary, and Plaintiffs' motion is therefore DENIED AS MOOT.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

CONCLUSION

For the foregoing reasons, Maplewood's motion to dismiss the First Amended Complaint is DENIED and Plaintiffs' cross-motion to amend the First Amended Complaint is therefore DENIED AS MOOT.

Additionally, the Clerk of the Court is directed to terminate Dell, Glosson, and Augustin as defendants in this matter as the claims in the First Amended Complaint pertain only to Maplewood.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February __19__, 2014
Central Islip, NY